UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

JESSICA E. GROB, *on behalf*
*of herself and all other similarly*
*situated individuals*,

             Plaintiff,

v.                               Civil Action No. 3:23-cv-212

EXPERIAN INFORMATION
SOLUTIONS, INC.

             Defendant.

## <u>CLASS ACTION COMPLAINT</u>

Now comes the Plaintiff, Jessica E. Grob ("Ms. Grob"), by Counsel, and as for her

Complaint against Defendant Experian Information Solutions, Inc., alleges:

### PRELIMINARY STATEMENT

1.      This is an action for actual, statutory, and punitive damages, costs, and attorney's

fees pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2.      Defendant is one of the three largest consumer reporting agencies ("CRAs") in the

United States. It gathers, compiles, parses, and sells data regarding nearly every adult American.

3.      Among the countless products it sells from the data it compiles is a Social Security

verification, in which it attempts to confirm for employers that prospective employees have valid

Social Security Numbers ("SSNs").

4.      Experian's Social Security verification product performs a search of Experian's

vast database of consumer information and attempts to determine whether the SSN of a prospective

applicant "matches" an SSN in Experian's records.

5.      Experian then reports those results to the employer, which Experian knows relies on those results to make hiring decisions because employers are generally prohibited from employing individuals without genuine SSNs.

6.      Experian provided such an SSN trace for Walgreens, a prospective employer of Plaintiff. Walgreens ordered a consumer report for employment purposes, commonly known as a background check, from non-party First Advantage.

7.      First Advantage, in turn, ordered an SSN verification search from Experian.

8.      Experian's verification system failed badly, as it falsely reported to First Advantage, and thus Walgreens, that the SSN on her application did not "match" the SSN Experian possessed or somehow generated.

9.      First Advantage assigns grades or scores—often called "adjudication"—to background checks it produces for Walgreens, essentially determining applicants' ability to work based on criteria Walgreens provides to First Advantage.

10.     When the Experian SSN verification does not produce a match, Walgreens' hiring criteria instruct First Advantage to grade or score the applicant "ineligible" for employment at Walgreens.

11.     Based on the failed match of Plaintiff's SSN by Experian, First Advantage scored Plaintiff ineligible to work at Walgreens.

12.     This report to Walgreens was false. Plaintiff has a validly issued SSN and is eligible to work in the United States. Yet, Experian reported to First Advantage she did not.

13.     Based on this inaccuracy, Plaintiff asserts a claim under 15 U.S.C. § 1681e(b), as Experian failed to employ reasonable procedures designed to assure the maximum possible

accuracy of the information it reported. She asserts this claim for herself and a national class of consumers who have valid SSNs but for whom Experian reported they did not.

14.     Beyond accuracy of reporting, one of the cornerstone goals of the FCRA is transparency. To that end, it requires that CRAs provide to consumers, on request, all information the CRA possesses about the consumer, as well as the sources of that information. 15 U.S.C. § 1681g.

15.     The information demanded by Section 1681g is commonly called a full file disclosure.

16.     Hoping to learn the source of the problem matching her valid SSN to her, Plaintiff wrote to Experian in May 2021 and requested her full file disclosure.

17.     Experian provided some information in response, but did not include anything relating to its supposed inability to match Plaintiff's SSN when she applied to work at Walgreens.

18.     This failure violated Section 1681g. Plaintiff plainly asked for her consumer file disclosure, which Congress has concluded is a pertinent and valuable right under the FCRA, yet Experian would not provide Plaintiff with all the information it possessed about her.

19.     Plaintiff therefore suffered an informational injury because she was statutorily entitled to the information Experian possessed about her as well as the sources of that information, yet Experian provided neither that related to the supposed inability to match her SSN.

20.     Plaintiff therefore brings a nationwide class claim against Experian under Section 1681g for its failure to provide all of the information it possessed about Plaintiff and similarly situated consumers.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this case under the provisions of 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

22.     Venue is proper in this Court because Ms. Grob resides in this District and Division, and a significant part of the events giving rise to Ms. Grob's claims occurred in this District and Division.

## PARTIES

23.     Ms. Grob is a natural person who resides in Henrico County, Virginia. Ms. Grob is a "consumer" as protected and governed by the FCRA.

24.     Experian Information Solutions, Inc. is headquartered in California and does business in the Commonwealth of Virginia through its registered agent.

25.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

## FACTUAL ALLEGATIONS

### *Congress Has Established the Rights to Information at Issue Here to Protect Consumers From Actual Harm*

26.     Congress enacted the FCRA in 1970 with the aim not only of empowering consumers with the ability to correct inaccuracies in the then-burgeoning credit-reporting industry, but to foster the transparency in allowing them to police the information in the files consumer reporting agencies ("CRAs") maintain about them. *Covington v. Equifax Info. Servs., Inc*., No. 18-15640-KM-MAH, 2019 WL 4254375, at *3 (D.N.J. Sept. 9, 2019) ("Congress enacted the FCRA 'to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'").

27.     Congress created the consumer's right to see their full credit file in order to allow him or her to monitor, prevent and if discovered correct inaccurate information in their file. As this Court has noted:

> The finding of injury in fact in these decisions rest in large part on the consumer's inability to monitor his or her file for falsity when not provided the relevant information. *See, e.g.*, *Patel*, 2016 WL 6143191, at *4 ("[A] consumer cannot monitor [his or] her file for falsity if [he or] she is not given the relevant information. That impediment, that non-disclosure, is thus a real injury. At the very least, preventing a consumer from monitoring [his or] her file presents a 'risk of real harm' of exactly the type that [the] FCRA seeks to prevent (*i.e.*, the dissemination of incorrect information); and this risk can itself 'satisfy the requirement of concreteness.'").

*Clark v. Trans Union, LLC*, No. 3:15-cv-391, 2016 WL 7197391, at *10, n.20 (E.D. Va. Dec. 9, 2016).

28.     But this conclusion is nothing new—courts have long-recognized that one of the keys to accurate reporting is to permit consumers to know what the CRAs know about them and how the CRAs learned it. *See, e.g.*, *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987) (discussing reasons behind enactment of the FCRA and noting the rights it provides consumers, among them "the reporting agency is required to divulge the information in its files concerning the interested consumer").

29.     Experian itself has repeatedly and publicly advised consumers of the real value and importance in obtaining and reviewing the content of their Experian file. It explains that "[y]our Credit Report captures financial information that lenders use to determine your creditworthiness. This includes the type of credit accounts, current balances, payment history, and any derogatory items you may have. You will also get a summary of your account totals, total debt, and personal information." https://www.experian.com/consumer-products/free-credit-report.html, last visited March 24, 2023.

30.     As noted above, the FCRA demands that CRAs provide consumers with everything in their files, including sources of information, when a consumer requests it. 15 U.S.C. § 1681g(a). Such is a substantive right with which Congress provided consumers when it enacted the FCRA.

31.     Further, while consumers are entitled to receive one free copy of their complete file disclosure each year (15 U.S.C. § 1681j(a)(1)(A)), Congress recognized that this disclosure had a tangible and actual monetary value and provided that consumers must purchase any full file disclosure beyond that annual copy. 15 U.S.C. § 1681j(f)(1). That charge began at a monetary price if $8.00, but is now permitted up to $12.50. *See* 84 C.F.R. § 515.

***Plaintiff Applies for Work At Walgreen's,***
***and Experian Sells An Inaccurate Consumer Report About Her***

32.     In May 2021, Ms. Grob sought employment with Walgreens at its store located at 11300 Nuckols Road, Glen Allen, Virginia 23059 (the "Store").

33.     Ms. Grob completed an online application through a website maintained by Walgreens.

34.     Thereafter, a manager at the Store, Brianne, contacted Ms. Grob and advised that the Store needed employees, and Ms. Grob was eligible to be hired.

35.     As part of its hiring process, Walgreens uses background checks to make employment decisions.

36.     As a precursor to the background report process, Ms. Grob provided Walgreens with her Social Security Number and verified that she was eligible to work in the United States. Because she is.

37.     Ms. Grob visited the Store on May 18, 2021 to meet with Brianne in person. Brianne directed Ms. Grob to return to the Store the next day for her first day of employment.

38.     Walgreens ordered a background report on Ms. Grob from First Advantage on or about May 18, 2021.

39.     As part of its investigation into Ms. Grob's history, First Advantage purchased a SSN verification product from Defendant Experian.

40.     Experian returned to First Advantage a result that it was unable to "verify" Ms. Grob's SSN.

41.     This was inaccurate, as Ms. Grob has a validly issued SSN and is eligible to work in the United States because she was born here.

42.     An Experian credit report about Plaintiff from around the same time Experian was supposedly unable to verify Plaintiff's SSN showed "None" under the heading "Social Security Number Variations."

43.     First Advantage completed Ms. Grob's background report within five hours and sent it electronically to Walgreens. First Advantage adjudicated Plaintiff as "In-Eligible for Hire" based on First Advantage's inability to "verify" Plaintiff's SSN because of the flaw in Experian's verification product.

44.     On May 19, 2021, Ms. Grob reported for and worked her first shift at the Store.

45.     On the same day, First Advantage sent to Ms. Grob what Walgreens claims is a "pre-adverse action" notice intended to comply with 15 U.S.C. § 1681b(b)(3).

46.     On May 20, 2021, Ms. Grob reported for her second shift at the Store and worked for approximately two hours before she was pulled aside by Brianne and advised that she was being fired because of the background report prepared by First Advantage.

47.     Ms. Grob was shocked and dismayed at being fired by Walgreens. Because she was a rising first-year student at the University of Virginia, she planned to transfer her employment with Walgreens to a store in Charlottesville to continue working while attending college.

48.     Experian's false reporting of an unverified SSN to First Advantage scuttled those plans.

49.     Attempting to learn more about the problem, Plaintiff exercised her FCRA rights and requested from Experian her full file disclosure. Under the FCRA, that disclosure is to contain "[a]ll information in the consumer's file at the time of the request," including "[t]he sources of the information." 15 U.S.C. § 1681g(a)(1), (2).

50.     Experian half-heartedly complied with its Section 1681g obligations, as it provided Plaintiff some information but did not include anything relating to its supposed inability to verify Plaintiff's SSN.

51.     Experian therefore not only ruined Plaintiff's ability to obtain employment at Walgreen's, it thwarted her ability to get to the bottom of the problem by revealing to her the supposed inability to verify her SSN and the source of the information supporting that conclusion.

### *Experian's Withholding of Information Caused Plaintiff Concrete Harm*

52.     Experian maintains information about consumers' Social Security Numbers that it sells to businesses for purposes like "[f]ind[ing] consumers with name changes; locate aliases, maiden and misspelled names; or consumers who have changed their identities," and "[d]etect[ing] fraud or obtain the latest phone number and contact information." https://www.experian.com/business/products/social-search, last visited March 24, 2023.

53.     Discovery will confirm that although Experian gathers, parses, and sells information relating to consumers' Social Security Numbers, it does not share the full complement of this information with consumers who request their file disclosures as a matter of course.

54.     While the FCRA demands that Experian provide this information to consumers, Experian does not.

55.     Therefore, anyone for whom Experian reported that it was unable to "verify" their Social Security Number, who then also requested their file disclosure from Experian, were deprived of information Congress long ago determined they should receive.

56.     Experian never includes the information relating to its supposed inability to verify consumers' SSNs, eliminating their ability to have whatever the problem is corrected.

57.     Because Experian operates under the FCRA every day, it is aware of the obligations Act imposes.

58.     Experian knows about its legal obligation to provide all information in a consumer's file upon the consumer's request. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

59.     Despite knowing these legal obligations, Experian acted consciously in breaching its known duties and depriving Plaintiff and other members of the class of the information that each was entitled to under the FCRA.

60.     Experian's conduct was not a mere mistake or accident. Instead, it was the intended result of its standard operating procedures.

61.     Discovery will confirm that Experian has not and does not intend to modify its procedures to comply with the FCRA, because compliance would increase its operating expenses and compliance costs.

62.     Additionally, Experian obtained or had available substantial written materials that apprised it of its duties under the FCRA, including through the Consumer Data Industry Association, as well as its own legal counsel.

63.     Accordingly, Experian's violations of 1681(g) were willful and it is therefore liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff restates each of the allegations in paragraphs 1 through 63 as if set forth at length herein.

65.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class defined as:

> All natural persons residing in the Fourth Circuit (a) who Experian issued to a third party a report stating it was unable to verify the person's SSN, (b) who later requested their consumer file from Experian, (c) within the two years preceding the filing of this action and during its pendency, and (d) to whom Experian provided a response that did not include any reference to the report regarding the person's SSN. Excluded from the class definition are any employees, officers, or directors of Experian, any attorney appearing in this case, and any judge assigned to hear this action.

66.     Plaintiff incorporates her prior allegations and estimates that each class is so numerous that joinder of all members is impractical. Although the precise number of class members is known only to the Defendant, Experian markets SSN verification products and sends out hundreds of thousands of consumer file disclosures per year, and Experian's uniform practice and procedure is to always omit the SSN-verification information, and its source, from such disclosures. Accordingly, Plaintiff estimates that the class size for the Fourth Circuit alone numbers in the thousands.

67.     Plaintiff's claim is typical of those of the class members. All are based on the same facts and legal theories. Experian's response to a consumer's request for a full copy of his or her

consumer file routinely fails to include any information about the nature of the SSN verification information stored in Experian's systems or its source.

68.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling FCRA class actions. Neither the Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

69.     Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions would create a risk of adjudications that would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair their ability to protect their interests.

70.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds generally applicable to the class, thereby making appropriate declaratory relief with respect to the class as a whole.

71.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

      A.     As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

      B.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as

they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring such claims individually. Further, most consumers affected by Experian's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. A win for one consumer would set the law for every similarly situated consumer.

**Count One – Violations of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**
**Individual Claim**

72.      Ms. Grob re-avers and incorporates all other factual allegations set forth in this Complaint.

73.      As a nationwide CRA, Experian is obligated to meet certain requirements of the FCRA. Pertinent here, CRAs like Experian must utilize reasonable procedures designed to ensure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

74.      Experian conducted its SSN "verification" for Plaintiff by trying, and failing, to match the SSN Plaintiff provided to Walgreens to some unknown data point or points.

75.      On information and belief, Experian, in its contract with third parties, explicitly tells them not to rely on the information Experian provides, and it disclaims any responsibility for the accuracy or currency of that information.

76.      The FCRA demands that Experian do the opposite—it must have in place reasonable procedures designed to assure the maximum possible accuracy of the information it trades. 15 U.S.C. § 1681e(b).

77.      Telling customers that its data about consumers is not reliable falls meaningfully short of the obligations the FCRA imposes on CRAs like Experian.

78.     Moreover, the United States Social Security Administration (the "Social Security Administration") provides several services for verifying Social Security numbers, including the "Consent Based Social Security Number Verification Service" (the "CBSV"). According to the Social Security Administration, the CBSV functions as follows:

> CBSV is typically used by companies that provide banking and mortgage services, process credit checks, provide background checks, satisfy licensing requirements, etc.
>
> With the consent of the SSN holder, CBSV can verify if the SSN holder's name, date of birth, and SSN match SSA's records. CBSV returns a match verification of "yes" or "no." If our records show that the SSN holder is deceased, CBSV returns a death indicator. CBSV does not verify an individual's identity.

Social Security Administration – Consent Based Social Security Number Verification Service (*available at* https://www.ssa.gov/cbsv/index.html, last accessed March 24, 2023).

79.     Instead of using the CBSV or another reliable service, Experian uses some other data source and process because it allows for greater automation and cost control.

80.     Experian reported inaccurate information about Plaintiff, and that inaccurate information substantially contributed to Walgreens taking an adverse action against her.

81.     Moreover, Experian's data inaccurately indicated that there was something wrong with Plaintiff's Social Security Number, rendering her "In-Eligible for Hire."

82.     The information Experian contributed to the background report for Walgreen's caused Walgreens to fire Plaintiff.

83.     As a result of this conduct by Experian, Plaintiff suffered actual damages, including without limitation, by example only, and as described herein on her behalf by counsel: loss of employment, loss of income, damage to reputation, embarrassment, humiliation, time and money to attempt to correct Experian's false reporting, and out of pocket costs.

84.   The violations by Experian were willful and/or reckless, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Experian was negligent, entitling Ms. Grob to recover under 15 U.S.C. § 1681o.

85.   Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs, and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**Count Two – Violations of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681g(a) Class Claim**

86.   Plaintiff re-avers and incorporates all other factual allegations set forth in this Complaint.

87.   Plaintiff brings this claim, for violations of 15 U.S.C. § 1681g, on behalf of the putative class identified above.

88.   Experian violated 15 U.S.C. § 1681g(a), by way of example only, as to Plaintiff and each member of the putative Class by failing to provide a complete consumer file disclosure that included all the information and the source(s) maintained by Experian relating to the SSN verification Experian sold about them.

89.   As a result of Experian's conduct, actions and inaction, Plaintiff suffered actual injury, including the stress, frustration, and emotional distress described above. Such injuries resulted in actual harm to Plaintiff.

90.   Further, Plaintiff and each member of the Class suffered actual harm from the denial and deprivation of the information Experian was required to provide.

91.   Plaintiff and each member of the Class are entitled to recover statutory damages, punitive damages, costs and their attorney fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o

92.     Experian's violations of 15 U.S.C. § 1681g(a) were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff moves for class certification and for judgment against Defendant, as alleged for statutory damages and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs; and other specific or general relief as the Court finds just and appropriate.

Plaintiff further prays that the Court enter a judgment for actual, statutory, and punitive damages against Experian for her individual claim; for her attorney's fees and costs; for pre-judgment and post-judgment interest at the judgment rate; and such other relief the Court deems just and proper.

**A TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**JESSICA E. GROB**

By____*/s/ Drew D. Sarrett*_____
                    Counsel

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email: craig@clalegal.com

Drew D. Sarrett, VSB #81658
**CONSUMER LITIGATION ASSOCIATES, P.C.**
626 E. Broad Street, Suite 300
Richmond, VA 23219
Telephone: (804) 905-9900
Facsimile: (757) 930-3662
E-mail: drew@clalegal.com
*Counsel for Plaintiff(s)*